Okay, our final case this morning is number 13-1151, E2 Interactive versus Blackhawk Network. Mr. Fish. Good morning, Your Honor. Thank you. Your Honor, I seek your permission to pass up a small handout and also to provide a copy to opposing counsel. Is this something that's in the record? It is a capsulization of a set of tables that are in the blue brief, Your Honor. Capsulization? It's not the same as what's in the record? In the blue brief, Your Honor, the tables are put in the context of the text around them. I think you could just refer to what's in the blue brief rather than give us some newly created document. I agree. Thank you, Your Honor. May it please the Court. I stand here before you today because the District Court erred in failing to undertake and evaluate the clear and unmistakable disavowals that occurred with respect to the scope of the re-examination process. I stand before Your Honors today seeking a claim construction that, in fact, incorporates the clear and unmistakable positions taken during the re-examination by the patent holders. Specifically, the re-examination focused on a number of different pieces of prior art. All told, my request to this Court is that we be provided with an opportunity to have a claim construction focused on that intrinsic record and those disclaimers specifically related to the determining step, and within that, the requirement that there be an evaluation of terminal ID and transaction type. Your Honors, my request is not going to require this Court to make any new law. My request is not going to require this Court to stretch any existing jurisprudence. My request, in fact, is not asking this Court to go out on a limb, and I say that with confidence, Your Honors, because of the 17 different disavowals that have been identified in the blue brief as having occurred during the re-examination process. Those disavowals can be broken into two different categories, optimally three if we want to think of it this way, related to the concept of terminal ID and transaction type. Terminal ID and transaction type have been disclaimed a total of 17 times, as I mentioned, with the transaction type itself having, at minimum, eight different disclaimers. In the blue brief, they're all identified and they're recited not as paraphrases, not as summaries, and not as hope. They are the actual words of the applicant, of the patent holder, at the moment in time they were responding to the prior art. What I'd like to call your attention to in Table 3, in particular, has been Mark Number 12. This comes directly from the applicant, from the patent holder, before the Patent Office. These are their words, Your Honors. As this plain language of Claim 1 indicates, the requested transaction is initiated responsive to a determination that the requesting terminal is authorized to request the requested transaction type. That is, Claim 1 overtly requires, on page 19 of the blue briefs, Your Honor, that is Claim 1 overtly requires, this is their language, the requested transaction type, not the transaction request itself or the card identifier, to be used as the basis of an authorization determination. They take that concept and they repeat it, in fact, more than just that one time. They repeat that concept when they talk about the prior art Murphree. They repeat that concept when they talk about the Lorsch prior art. Those are found in Statements 14 and 15 in the Table 3 of the blue brief. They do the same in Table Entries 16 and 17 of Table 3 in the blue brief when they talk about the Watson reference and then ultimately the Dorff reference. These are clear and unmistakable disavowals of scope. They are directly related to and responsive to the prior art that was presented to the patent owner and the patent owner chose these words specifically to distinguish their invention from the prior art. As I mentioned, there are two different components. That was transaction type. The other is Terminal ID. That's found in Table 2 of the blue brief and that is found on pages 17 and 18. There there are three specific disavowals that relate exclusively to Terminal ID. I'd like to call our attention while we're together to one of them, number 9. The Weber gateway, Weber being a piece of prior art and again, these are their exact words right from the record. The Weber gateway only uses transaction type information to determine whether the transaction type indicated by the request is supported. This determination has nothing to do with determining whether a requested Terminal Identifier is itself authorized to request the requested transaction type indicated in the request. Thus, Weber fails to suggest or describe a determination that the requested terminal is authorized to request the requested transaction type. Again, this context here is during re-examination where the patent owner is seeking to distinguish their invention from the prior art. Identifying what is not in the Weber reference is an identification of what is in fact covered by the patent itself. This is one of three. Now, Table 1, Your Honor, Table 1 in the blue brief on pages 16 and 17. Identify instances in which the disavowal is found with respect to both at the same time, both Terminal ID and transaction type. I call our attention to one of them again for illustrative purposes. This time I'll reference entry number two. All three of the independent claims feature a determination that the requesting terminal is authorized to request the requested transaction type. This interpretation is also consistent with and informed by the description provided in the 439 patent specification, which details an evaluation of Terminal ID and transaction type. That is independent of card identifier yielding a conclusion of whether or not the terminal itself is itself authorized for the transaction type as claimed. Here again, the patent holder identifying what the claims are with respect to the prior art, then identifying to the examiner where in fact that is found support-wise in the specification, and then at the very end of that coming back and cleaning up the fact that and that is what the claims recite. Really? That's what it recites or as it says and that meets the claim limitation? I'm sorry, Your Honor. I didn't hear your question, I'm sorry. Is this statement to be interpreted as this is what the claims are limited to, you must always have Terminal ID and transaction type? Or is this statement simply saying this here in the spec is an example of where we do the determining and it's by virtue of using Terminal ID and transaction type in this example and that would meet the claim limitation? I don't think they would disagree with that. That would in fact meet the claim limitation, but that's a far cry different than saying that these two things must in every instance be present in order to meet the claim limitation. So Your Honor, to the extent that there is a question about that, I submit to you that both are required. They're both required the way it's... You can submit it all you want, but it's got to be a clear and unmistakable disclaimer and I'll tell you, I sure as heck don't see it in that statement. I think if Your Honor is to then take the other disclaimers and add them together... Okay, but you started with there are 17 clear and unmistakable disclaimers and you know what, you don't have 17, you may have one and that's all you need, but you sure as heck don't have 17. I mean, and this is kind of why the district court made the craziest comment I've ever seen in a hearing in this case and I was hurt and offended on behalf of all patent lawyers everywhere when you two got him to the place where he said he'd rather have a heroin distribution trial any day than another patent case because the prosecutors and defense attorneys don't game the system nearly as much as you guys do and you were both before him flabbergasted. Your Honor, to the extent that the count itself of disclaimers is not the test, you and I agree. Your Honor, one is all that is necessary. My point with the volume here is that the volume continues to inform that these are clear and unmistakable disclaimers. They can be taken in toto, they can be taken in the different constituent parts, but the fact is that one of ordinary skill in the art upon reading that reexamination record would continue to learn over and over and over again that in fact both of these elements, terminal ID and transaction type, in fact are required and they're required to get past the prior art. That's why they're there. This is not an academic dialogue in the reexamination process about what the prior art does or does not teach. It's designed to be able to effectuate a successful reexamination process by moving the patent claims out of harm's way with respect to the prior art. And that's why these statements are made. And so I submit to Your Honor that even if you say that two may be ambiguous, I submit that all of them in toto, Your Honor, resolve the question in a clear and unmistakable way that anyone with ordinary skill in the art reading this reexamination would believe that that in fact is the scope of these claims. That the judge did not apply those in fact is the error that's here. It is undisputed between the parties. Undisputed that if either one- But as a hypothetical matter, if you had 17 wishy-washy statements, you think 17 wishy-washy statements by virtue of their volume amount to a clear and unmistakable disclaimer? I understand Your Honor states it as a hypothetical. I do not believe these are 17 wishy-washy statements. I think they're unmistakable. And I think when we read them in- Well, one or two isn't. And I just showed you why it isn't. So that one's gone, right? Or do you think 17 weak statements, no one of which amounts to clear and unmistakable disclaimer, nonetheless create clear and unmistakable disclaimer as a matter of law? Is it possible if you hint at something enough, suddenly it's become true? Well, I think we have to think about what Saffron teaches us, Your Honor, which is that there's really more than just something. We should be looking for more than something that is a simple statement of disavowal. And that's what Saffron really, I think in a significant way, helps everyone understand, which is we have to really look at what is going on in toto. And if we look at what is going on in toto, what we see, whether we wish to define or describe any one of these individually or ascribe a certain level of value or significance to them, I submit to Your Honor that we look at the record as a whole, which is what Saffron teaches us. And we look at these as a whole, what we see is the patent owner trying desperately to get past multiple pieces of prior art where these features are not found. And these features, this evaluation of terminal ID and transaction type, become a constant theme to move past the prior art and they become a drumbeat of disavowal that is too hard to ignore. The fact that we have these different statements is significant. And as I mentioned, there is no magic number. Your Honor is correct. It could be one. It could be five. It could be seven. But the volume here has a quality all its own. And again, standing in the shoes of one of ordinary skill in the art, looking at this to understand what their meets and bounds are here. What are the legal rights that are available to this patent owner and what are not? Looking at this record, it becomes clear there was a substantial, a clear and unmistakable disavowal. You're into your rebuttal time. Do you want to save some time for rebuttal? I will. Thank you, Your Honor. Thank you, Mr. McGrath. Mr. McGrath or Ms. McGrath. May it please the Court. I'm going to address specifically the statements contained in the three tables that Blackhawk cites. But before I do, I want to note that it is not enough to look at specific statements out of context, pile them up, and then say that's the entirety of the… That's not what's going on here. I mean, there are some specific statements which, and it's not 17 of them, but there are some very specific statements that are a problem for you. Take, for example, the statements 1198 and 99, paragraphs 30, 32, and 33. And these seem to distinguish the prior art on the theory that it doesn't do what you say now that your patent does. And that's the problem, Your Honor, with taking statements out of context. And I will address those… What's out of context about it? Well, we have to understand what the objection was. I believe those statements concern the Weber patent. The Weber patent was cited as a secondary reference rendering the claims obvious in light of Dawson. So, after addressing why Dawson did not achieve the determining step that's claimed in the Weber patent, and why Weber does not fill that void, because the determining step made in Weber was a general transaction authorization. I don't understand what you're saying. If somebody comes in and says, ignore this piece of prior art because it doesn't teach X, which is what our patent teaches, isn't that a disclaimer? It's not what it said. If you read the entire section where Weber is written, what it says is Weber does not have a general transaction authorization. No, that may be one reason, but the problem is the patentee gave multiple reasons. He said on 1198, Weber fails to disclose using the TID or any terminal identifier as a basis for authorizing a terminal to perform a requested transaction. Thus, Weber fails to disclose a determination that requesting terminal, but I need a quote of the claim. Correct. We don't look to see whether the prior art was a problem or not a problem. We take the statements that the applicant made about the prior art and if there is a distinction of the prior art as being different from this patent because the prior art teaches one thing and this patent teaches another, that's a disclaimer. I'm trying to explain that particular statement was not a disclaimer. The context is the patent office had cited Weber as filling that gap simply because the terminal identifier was in the transaction request. In addressing that, Incom said, yes, the terminal identifier is in fact in the transaction request, but that's not enough. That doesn't fill the gap of Dawson and teach the determining step because that terminal identifier is in any way relevant to the determining step in the 439 patent. It had to address the notion that the terminal identifier was in the request because that's what the patent office had said made it relevant. Just because a terminal identifier is in the transaction request doesn't mean... I don't understand what you're saying. I'm sorry. I don't understand it. Well, let's... I mean, there's specific statements here that Weber doesn't do what you are now contending the claims of this patent require. The claims of this patent only require a determination as to whether the requesting terminal is authorized to request the requested transaction type. It doesn't say how it has to be done. And when the patent office relied on Weber for saying the determination in Weber is the determination of the patent office, all it pointed to was the fact that there was a terminal identifier in the request. And the response to that is, but that's irrelevant to the determination because the terminal identifier isn't used to make the determination. Not that it has to be used, but if it was used, it would be a problem for the patent. So it was just saying that terminal identifier is not obvious. And if we contrast that statement with other statements in the record, there's no way one reading... I don't understand. I feel like you're making their case for them. So I must be misunderstanding what you're trying to convey to me. So let me tell you how I understand what you're saying, and then you can explain to me why I'm wrong. What I understand you to be saying is the applicant said the terminal ID in Weber isn't used for authorization purposes. It's not used in the determining step. And then said, and therefore Weber doesn't meet the determining step of this claim. Well, how is not a statement that the terminal ID is required to be used? Because it's never saying that... All it's saying is the existence of a terminal ID itself is not enough. You have to have more. You have to have this determination. It uses the terminal ID. You don't have to have it. If it used it, it would be a problem because claim one covers the use of a terminal ID but does not require. And all it's saying is the mere existence of a terminal ID isn't enough. Those statements are not referring to the mere existence of a terminal ID. They're saying that Weber doesn't teach using the terminal ID for authorization. And again, if you look, if you read the entirety of that section, you will see that that is what they were addressing. Well, then your honors are aware of statements like this that appear on page 1230 of the record, where incomes addressing the independent claims and said that they do not include language quote, qualifying the determination based on the stored value card or otherwise making reference to the particular transaction that is requested. It is clear from the absence of any qualifying language within the reference to the determination that claim one contemplates a determination of whether a terminal is authorized for transaction type irrespective of transaction detail. And we... That doesn't have anything to do with terminal ID. That's transaction detail. Including terminal ID. No, no. It's not included. You clearly throughout this entire specification use those as alternatives. Terminal ID is never considered transaction type. No, no. Not transaction type. Transaction detail. Let me explain. When a transaction comes in, it has multiple... Okay. You're wanting me to take a general statement that doesn't say anything about terminal ID and use it to somehow override or cure five different disclaimers about terminal ID in the context of Weber. Literally. I don't. And I think it's... I want to discuss those now, those statements that you believe constitute a disclaimer. I'm going to turn to A1376 because this is actually... And I'm going to say notice of allowance, but I'm wrong. It's not notice of allowance. It's what? Confirming. What? Confirming? Did I get it right? Confirmation. Okay. Re-exam. I always want to say it's a notice of allowance, but it's not. It's a notice of confirmation of the claim. Because it's a re-exam. So that's what I was looking for support on. So I don't make a mistake. This is the examiner explaining his reasons for confirmation. Okay? 1376, paragraph five. This is surprisingly not in the 17 examples or 57 tables in the Blue Brief. But 1376, paragraph five, the examiner says, with regard to the rejections utilizing Weber... I'm going to let you get to it. Are you with me, Ms. Debra? I am. Thank you. Okay. PO, patent owner, has shown that Weber discloses a protocol for requesting messages that include the terminal ID and transaction type. However, the terminal ID in Weber is not used for transaction authorization and therefore does not teach making a determination of whether a uniquely identified terminal is authorized for the particular type of transaction indicated within the request. I don't know. It seems to me that the examiner understood you to say terminal ID is unique, identified terminal is required for authorization and he understood your argument to require that and since Weber doesn't show it, he was willing to let you have the claim. And again, if we go back to why he said that, it is because initially that rejection, he was making the point that there was a terminal ID in Weber and therefore that fact was enough to close the gap in Dawson. Dawson clearly didn't make the determination of the 439. So he said let's combine Weber, which has a terminal ID, in the request and combine it. And the response to that is the fact that there's just a terminal ID is irrelevant. If it were used to make the determination, certainly it would be relevant. It would invalidate the claim because the claim certainly covers that. But it never said that it was required to make the determination. And I think, Your Honor, it would be helpful if I can just spend a minute or two explaining what the real issue in the re-exam was. Because I think if you understand that, these statements then become in context and it makes clear they're going towards another point, not the point that they're being used for. The issue was what Blackhawk was attempting to do is blur the distinction between simply authorizing a transaction and determining whether a requested terminal is authorized for a requested transaction type. So INCOM throughout the re-exam is trying to unblur that distinction. And it's a tough distinction to unblur. So you can see on page 4328, it makes clear this is the distinction they're trying to make. A difference must be contemplated between a transaction request and a transaction requested type. You're suggesting there's a difference between determining and authorizing? No, no. The claim talks about determining if the requesting terminal is authorized. Correct. And that's not what the prior art did. But that's what the Blackhawk was attempting to do in the re-exam, was reframe what the determining step is. I thought you were saying they were trying to draw a distinction between, maybe I'm mistaken, between determining and authorizing. No, no. No, Your Honor. That is not. Are determining and authorizing the same thing? Making a decision, yes. You have to make a decision. Are they the same thing? No. You can authorize without making a decision that something's authorized. I can let you go through without determining whether you're authorized. But if I'm making a decision, but that's not the distinction that they were trying to blur. What distinction are you trying to make? In the prior art, the determination was simply, is this transaction authorized? For instance, you might have a transaction for activation. And the question is, maybe, does this merchant? Well, in the prior art, you didn't use terminal ID to determine authorization. No, Your Honor. That's not what you said. No, Your Honor. I respectfully disagree. In the prior art, there was no determination that a requesting terminal is authorized for the requesting transaction. For instance, in the prior art, you might have a determination that an activation. Well, fine. But you said the prior art doesn't use terminal ID for determining authorization. I think we discussed that in Weber, and that was one instance where it was responding to the specific thing that the patent office said, which is, there's a terminal ID. How can this not be obvious? There's a terminal ID. And the specific response to that was, yes, there's a terminal ID. But that doesn't mean the terminal ID is relevant to the determination. It's not being used. What you said is, yes, there's a terminal ID, but it's not used for authorization. That's, in essence, what they were saying. You're saying now that that's exactly what's not required. All right. Let me step back. The determination at issue in the 439 is specific. You asked the question. Here's the problem. You say Weber fails to disclose using TID or any terminal identifier as a basis for authorizing a terminal to perform the requested transaction. Thus, Weber fails to disclose a determination that a requested terminal is authorized. What you're now arguing is, well, TID was the only thing the examiner pointed to, and so we were only saying, no, the TID there isn't what is used, and that's how it doesn't meet the requirement. The problem is what you said was the TID isn't the basis. Thus, it doesn't meet the determination step. And that's the problem with taking things out of context. It's not the basis. If it were the basis, I think there's no question that if the terminal ID were the determination, all that entire discussion of the TID is supposed to be saying is, look, the TID is there, but that's not relevant. It has to be relevant here. It has to be used in the determination. It's not. That's the only way the existence of the TID would be relevant. Well, but that's exactly the point. You're saying the terminal ID has to be used in the determination, and now you're saying it doesn't have to be. For Weber to be relevant, it would have to be, if mere existence is not enough, that far cry from saying Claim 1 requires the terminal ID to be used in the determination. There has to be words of manifest exclusion or restriction. There are no such words. It's simply saying for that to be relevant, it would have to have been used. It wasn't saying it has to be used in Claim 1. My theory is that if you distinguish the prior art on a particular ground, you're not bound to make that part of your own claim. If you are saying our claim requires, and the prior art doesn't show, absolutely. In context, that is absolutely not what's being said here, and I can contrast that to statements like what appears on 1235 of the record. The independent claims of the 439 require, and the applied art fails to disclose, a termination as to whether the requesting terminal is authorized to request the requested transaction type made on the level of transaction type. That's what the claims require. There is not a single statement that Blackhawk has cited or otherwise in the re-exam where there is any words of manifest exclusion saying what the independent claims require is a determination based on the terminal ID. You don't see it in the claim, you don't see it in the spec, and you don't see it in the re-exam. Do you believe there's a disclaimer at all of what could be used in the determining step? For example, customer information. Can that be the basis for the determining customer account level information? As long as the determination is made that that terminal that made that request has the authority to request, say, an activation transaction. It doesn't matter how it's made, but it has to be determined. It can't just be a determination of this. Look at 1199, paragraph 33, final two sentences on that page, 1199. If I were not going to read in terminal ID, but rather go broader, let's look at these sentences. This is because in the remote transaction authorization system of Weber, transaction authorization is performed on the customer account level rather than at the level of transaction type. Thus, Weber fails to describe or suggest a determination that the requesting terminal is authorized to request the requested transaction type. Why isn't that? You're saying, look, Weber only uses customer account level information in its determining. Thus, it doesn't do this. Because it's using that customer account information just to determine that the transaction is authorized, not that the requesting terminal is authorized to do, for instance, activation requests. It's a completely different type. My time is up, but I'd love to be able to finish the answer. Can I finish the answer? You can give one more sentence. All right. The transaction being authorized is simply, for instance, do we recognize this merchant? Yep. Transaction is authorized. Not, yeah, we recognize the merchant, but does this terminal have the authority to make, for instance, activation requests? Big distinction. Weber doesn't teach it. The missing PID doesn't teach it. OK. Thank you, Ms. McGrath. Thank you. That was a long sentence. A lot of semicolon. Mr. Fish? Thank you, Your Honor. Terminal ID and transaction type are two... You don't have to use your rebuttal. I'm sorry, sir? You don't have to use your rebuttal. Go ahead. Thank you, Your Honor. If this court finds that either terminal ID or transaction type is, in fact, a limitation of the patent, I respectfully request, then, that this court reverse the jury verdict of infringement. It's undisputed that the system that was at issue in this case does not employ the terminal ID or the transaction type analysis that would be, then, part of this patent's claim set. So with that, Your Honor, I welcome any follow-up questions. It sounds like there may be none. I'm happy to conclude early, then.  Thank both of you. Thank you, Your Honor. The case is submitted, and that concludes our session for today. All rise.